# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LINDA SIMPSON and TERA MILLER, on behalf of themselves and all others similarly situated, ) ) ) ) Plaintiffs, ) ) v. ) ) CARESOUTH HHA HOLDINGS, LLC, ) ) Defendant. ) | Civil No. 3:16-cv-79<br>Judge Aleta A. Trauger |

## MEMORANDUM

The plaintiffs have filed a Motion for Conditional Certification and for the Issuance of Court-Supervised Notice (Docket No. 26), to which the defendant has filed a Response (Docket No. 31), and the plaintiffs have filed a Reply (Docket No. 34). For the reasons stated herein, the motion will be granted in part and denied in part.

## BACKGROUND & PROCEDURAL HISTORY

The defendant, CareSouth HHA Holdings, LLC ("CareSouth"), is a Georgia corporation with home health and hospice operations in seven states, one of which is Tennessee. (Docket No. 1 ¶ 4.) The named plaintiffs, Linda Simpson and Tera Miller, and opt-in plaintiff Julie Head were employed by CareSouth as Registered Nurses ("RNs") providing home health and hospice services. (Docket Nos. 21–23.) On January 25, 2016, Ms. Simpson and Ms. Miller filed this action pursuant to § 216(d) of the Fair Labor Standards Act ("FLSA") on behalf of themselves and all "individuals who provide, in whole or in-part, non-companionship medical or health services to patients," including RNs, Licensed Practical Nurses, Certified Nurse Assistants, Physical Therapists, and Occupational Therapists. (Docket No. 1 ¶ 6.) The plaintiffs allege that

1

CareSouth paid them for their work through a combination of per-visit "fees" and per-hour wages but that, as a matter of company policy, CareSouth never paid them or other similarly situated employees an overtime rate for hours worked over 40 hours per week. (*Id.* ¶¶ 9–11.) The plaintiffs further allege that they routinely worked over 50 hours per week and sometimes much more "depending on the number of [home] visits assigned and other factors." (*Id.* ¶ 12.)

On April 5, 2016, the plaintiffs filed the instant Motion for Conditional Certification and for the Issuance of Court-Supervised Notice (Docket No. 26), accompanied by a supporting Memorandum (Docket No. 27). In the motion, the plaintiffs seek conditional certification of an FLSA collective action class consisting of "[a]ll individuals who, during any time since January 25, 2013, have been employed by the Defendant as a Provider and paid, in part, on a fee-per-visit basis." (Docket No. 26, p. 2.) The plaintiffs also request that CareSouth provide them with a list of the names, addresses, and email addresses for each potential class member and that the court authorize distribution of their proposed form of notice to those individuals. (Docket No. 27, p. 15; Docket No. 27-1.) The plaintiffs' proposed form of notice, which is attached to their motion, provides potential class members with 90 days from the date that the notice is mailed to opt into the suit. (Docket No. 27-1, p. 2.)

In support of the motion, the plaintiffs filed the declarations of Ms. Miller, Ms. Simpson, and Ms. Head, describing their employment with CareSouth and the compensation that they received for their work. (Docket No. 21–23.) Ms. Simpson and Ms. Miller both state that they were employed as RN Case Managers at CareSouth's Cleveland, Tennessee location. (Docket No. 21 ¶¶ 2–3; Docket No. 22 ¶¶ 2–3.) Ms. Head states that she was employed as an RN at CareSouth's Murfreesboro, Tennessee location. (Docket No. 23 ¶¶ 2–3.) All three state that they were paid for patient visits on a "per visit" basis, for case conference meetings at an hourly

2

rate, and for shifts they worked "on call," a flat fee. (Docket No. 21 ¶¶ 5–7; Docket No. 22 ¶¶ 5–7; Docket No. 23 ¶¶ 5–7.) All three further state that they regularly worked more than 40 hours in a week but never received any overtime pay for the additional hours. (Docket No. 21 ¶¶ 9–10; Docket No. 22 ¶¶ 9–10; Docket No. 23 ¶¶ 9–10.) Each states that it is her understanding that other nurses and home health workers in her office were compensated in the same way. (Docket No. 21 ¶ 11; Docket No. 22 ¶ 11; Docket No. 23 ¶ 11.) Finally, each declaration is accompanied by attached pay stubs that were purportedly sent from CareSouth's headquarters in Augusta, Georgia. (*See, e.g.*, Docket No. 21-4.)[1]

Ms. Simpson attaches to her declaration an employee handbook and a job description for the RN position, both of which, she states, were "prepared by [CareSouth] and provided to [her] in the course of [her] employment with the company." (Docket No. 21 ¶ 15.) The employee handbook does not, on its face, apply to any specific CareSouth office, nor does it distinguish between different locations or different states in which CareSouth operates. (*See* Docket No. 21-2 (Employee Handbook).) With regard to CareSouth pay policies, the employee handbook distinguishes between "non-exempt" and "exempt" employees, with non-exempt employees defined as those "who are not specifically exempt under the [FLSA] and are eligible to receive overtime pay under certain conditions" and exempt employees defined as "those who are defined by the FLSA as executives, administrators, outside sales persons, or professionals." (*Id.* at p. 36.) The handbook does not, however, state which specific types of CareSouth employees are

---

[1] The plaintiffs also filed the declarations of Ryan and Apryl Sowder, two former CareSouth employees and opt-in plaintiffs, in support of the motion. (Docket Nos. 24–25.) The Sowders, however, moved to be dismissed without prejudice from the action after CareSouth represented that they were categorized as non-exempt and overtime eligible and, therefore, not subject to the same pay policies as the named plaintiffs. (Docket No. 33, p. 1.) The court granted the motion to dismiss (Docket No. 35), and the Sowders' declarations, which describe the pay policies applied to them, are not pertinent to the pending motion.

classified as exempt from the FLSA. The job description outlines a CareSouth RN's essential job functions, responsibilities, and qualifications, including that the RN must be "[c]urrently licensed in the agency state of operation." (Docket No. 21-1 (Job Description), p. 2.) At the top of the job description are two lines where the position can be designated as either "exempt" or "non-exempt," and the line next to "exempt" has been marked with an "X." (*Id.* at p. 1.)

CareSouth filed a Response to the plaintiffs' motion on April 29, 2016. (Docket No. 31.) CareSouth does not oppose conditional certification of the plaintiffs' claims, but it does request two limitations on the plaintiffs' proposed class. (*Id.* at p. 1.) First, CareSouth objects to the plaintiffs' request in so far as it would certify a class consisting of any home health care worker who was compensated on a "fee-per-visit" basis, a definition that CareSouth argues would encompass individuals who, unlike the named plaintiffs, were treated as non-exempt. (*Id.* at pp. 1–2.) Second, CareSouth objects to the plaintiffs' attempt to obtain conditional certification of a "nationwide" class, arguing that "certification should be limited to Tennessee," because the plaintiffs "only provide declarations from employees in Tennessee." (*Id.* at p. 1.) CareSouth argues that, by providing declarations only from Tennessee employees, the plaintiffs have failed to place any evidence in the record regarding the company's pay practices outside of Tennessee. (*Id.* at p. 4.) The Response does not raise any specific objections to the plaintiffs' proposed notice, either to its content or the plaintiffs' proposed manner of publication.

The plaintiffs filed a Reply in support of their motion on May 10, 2016. (Docket No. 34.) In the Reply, the plaintiffs concede that conditional certification should "be limited to CareSouth's purportedly exempt employees who were paid at least in part on a fee-per-visit basis." (*Id.* at p. 2.) In light of this concession, the plaintiffs revise their formulation of the proposed class to include "[a]ll home health workers whom CareSouth classified as exempt and

4

who were paid, in part, on a fee per visit basis since January 25, 2013." (*Id.* at p. 10.) The plaintiffs do not, however, agree to a geographic limitation of the class, and they argue that the employee handbook and the RN job description demonstrate "that the pay policies at issue emanate from CareSouth's headquarters . . . and are not susceptible to variation from one location to another." (*Id.* at p. 2.)

## STANDARD FOR CONDITIONAL CERTIFICATION

The FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Once a collective action is certified, however, employees seeking to join the class must opt into the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." The Sixth Circuit, however, has held that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 267 (6th Cir. 2015) (quoting *O'Brien*, 575 F.3d at 585). Employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1009 (6th Cir. 2016) (quoting *O'Brien*, 575 F.3d at 585).

5

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the proposed opt-in plaintiffs. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (internal quotation omitted). At the first stage, the plaintiff bears the burden of showing that the employees in the class are similarly situated. *Shabazz v. Asurion Ins. Serv.*, No. 3:07-cv-0653, 2008 WL 1730318, at *3 (M.D. Tenn. April 10, 2008). At that point, "'the certification is conditional and by no means final.' The plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). In *Comer*, the Sixth Circuit approvingly quoted the lower court's decision, which stated that conditional certification "need only be based on a modest factual showing." *Id.* at 547 (quoting *Pritchard*, 210 F.R.D. at 596); *accord Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004) ("Plaintiffs must simply submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]" (internal quotation omitted)). If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546.

## ANALYSIS

I. **Conditional Certification**

Before the court may conditionally certify the plaintiffs' claims under the FLSA, it must determine whether the plaintiffs have provided sufficient evidence to demonstrate that they are similarly situated to other members of their proposed class: "All home health workers whom

6

CareSouth classified as exempt and who were paid, in part, on a fee per visit basis since January 25, 2013." (Docket No. 34, p. 10.) CareSouth does not oppose conditional certification of the plaintiffs' claims so long as the court limits the proposed class to the state of Tennessee. (Docket No. 31, p. 1.)

The plaintiffs have made the modest showing required for conditional certification of a collective action of current and former employees at CareSouth's Tennessee offices who were classified as exempt and who were paid, in part, on a fee per visit basis since January 25, 2013. Three plaintiffs have submitted declarations stating that, as RNs working for CareSouth, they were paid with a combination of "per visit" fees and hourly wages but were never compensated for any time that they worked more than 40 hours in a week. (*See, e.g.*, Docket No. 22 ¶¶ 5–10.) These three plaintiffs have also stated that other "nurses and home health workers" working out of the same offices as the plaintiffs were compensated "in the same way" the plaintiffs were compensated. (*See, e.g.*, *id.* ¶ 11.) At this stage in the proceedings, this modest factual showing is sufficient to meet the lenient standard governing conditional certification under the FLSA. *See, e.g.*, *Sniffen v. Spectrum Indus. Servs.*, No. 2:06-cv-622, 2007 WL 1341772, at *1–2 (S.D. Ohio Feb. 13, 2007) (granting conditional class certification where the plaintiffs submitted affidavits and payroll records showing failure to pay overtime wages).

The court is not, however, persuaded that, at this time, certification of a companywide class is appropriate or would serve the interests of justice and efficiency. While the plaintiffs have made the modest showing required for conditional certification of a collective action of allegedly misclassified employees at CareSouth's *Tennessee* locations, they have not provided sufficient evidence that CareSouth misclassified employees in locations outside of Tennessee and failed to pay those employees overtime wages to which they would otherwise be entitled.

7

The plaintiffs' personal knowledge of CareSouth's classification of its employees and its pay policies, as evidenced by their declarations, is limited to two CareSouth offices in Tennessee and does not extend to offices in other states in which CareSouth operates. The plaintiffs have not worked at any other CareSouth location outside of Tennessee and have not presented a declaration from any current or former employee who worked at such a facility. This lack of testimony regarding employment classification and overtime policies at other locations is generally fatal to a plaintiff's request for conditional certification of a companywide class. *See, e.g.*, *Ware v. T-Mobile USA*, 828 F. Supp. 2d 948, 954 (M.D. Tenn. 2011) (denying, without prejudice, conditional certification of nationwide class where declarations were limited to employees of Nashville and Colorado Springs call centers); *Roberts v. Corr. Corp. of Am.*, No. 3:14-cv-2009, 2015 WL 3905088, at *14 (M.D. Tenn. June 25, 2015) (Trauger, J.) (denying conditional certification of companywide class when all but one declaration regarding misclassification of employees and failure to pay overtime wages were made by employees working in Tennessee).

The plaintiffs argue that their proffered documentary evidence – specifically, the employee handbook and the RN job description – demonstrates that "the pay policies at issue were companywide policies, emanating from CareSouth's Augusta, Georgia headquarters," and that companywide certification of their claims is therefore appropriate. (Docket No. 34, p. 5.)[2]

---

[2] The plaintiffs also argue that the mere fact that paystubs were sent from CareSouth's headquarters in Augusta, Georgia demonstrates "centralization of payroll operations" that is sufficient, on its own, to justify conditional certification of a companywide class. (Docket No. 34, p. 7). The mere printing of CareSouth's address on paystubs is not, however, the kind of evidence of "centralization of payroll operations" that courts have found to support the existence of a common pay policy, nor does the plaintiffs' cited authority support the argument that such centralization alone could be sufficient, as a matter of law, to support certification of a companywide class. *See Goudie v. Cable Commc'ns, Inc.*, No. 08-cv-507, 2008 WL 4628394, at

The court is not, however, persuaded that these documents constitute sufficient evidence of a "single, FLSA-violating policy" that would justify companywide certification of the plaintiffs' claims at this time. *Gunn*, 625 F. App'x at 267. First, the employee handbook refers only to the difference between exempt and non-exempt employees; it does not establish that CareSouth had a common policy of *misclassifying* certain employees as exempt. In fact, the employee handbook merely states that CareSouth classified as exempt "those who are defined by the FLSA as executives, administrators, outside sales persons, or professionals" (Docket No. 21-2, p. 36), the very definition of an exempt employee found in the FLSA itself, 29 U.S.C. § 213(a)(1) (stating that maximum hour requirements do not apply to employees employed in an "executive, administrative, or professional capacity, . . . or in the capacity of outside salesman"). The handbook does not state which CareSouth employees are to be treated as exempt from the FLSA and which are classified as non-exempt.

Second, although the RN job description received by Ms. Simpson indicates that her position as an RN is exempt, there is no indication that the classification decision made on this form, which indicates that it was last revised on October 27, 2011, was done "uniformly in a centralized manner" and did not, instead, reflect an office- or location-specific decision to classify Ms. Simpson as exempt. The plaintiffs point to the fact that the job description states that an RN must be "licensed in the agency state of operation" (Docket No. 21-1 (Job Description), p. 3) as evidence that this job description was disseminated companywide, but the plaintiffs have presented no evidence beyond this general language demonstrating that the job

---

*6–7 (D. Or. Oct. 14, 2008) (concluding that an employee's sworn testimony that payroll information was sent to corporate headquarters for final processing and issuing of checks supported a reasonable inference that employees with the same job title were similarly situated *when combined with* other evidence of commonality).

9

description actually applied to RNs in other CareSouth locations, let alone that it was accompanied by an FLSA-exempt classification.

Finally, the plaintiffs argue that "[p]aying nurses and therapists a fee per visit while denying them proper overtime compensation is a common practice in the home health industry" and cite four recent cases in this district that certified companywide claims premised on such allegations. (Docket No. 34, p. 3.) Even assuming this is a widespread practice, however, does not relieve the plaintiffs of their burden to demonstrate that CareSouth, specifically, has implemented an FLSA-violating policy, not just in Tennessee, but companywide. General practices in the industry do not support a finding that the plaintiffs are similarly situated to the out-of-state members of their proposed class.

In sum, the court cannot, at this time, find that the evidence submitted by the plaintiffs justifies certification of a nationwide class. The court will, therefore, limit the conditional class to all home health workers in Tennessee whom CareSouth classified as exempt and who were paid, in part, on a fee per visit basis since January 25, 2013.

## II. Notice

CareSouth has not objected to the plaintiffs' proposed notice. The parties shall confer and file a revised, agreed-upon version of the notice consistent with the court's rulings herein.

## CONCLUSION

For the reasons stated herein, the Motion for Conditional Certification and for the Issuance of Court-Supervised Notice will be granted in part and denied in part. The plaintiffs' motion will be granted with respect to all home health workers in Tennessee whom CareSouth classified as exempt and who were paid, in part, on a fee per visit basis since January 25, 2013. The motion will be denied with respect to such employees at CareSouth locations in other states.

This denial will be without prejudice to the plaintiffs' right to seek companywide class certification and notice, should evidence obtained in discovery warrant such a request.

The court will order CareSouth to provide the plaintiffs with the names and last known mailing and email addresses of putative class members within 20 days. The court will also order the parties to confer and to file agreed-upon notice and consent forms within 20 days.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge